UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PROGRESSIVE NORTHERN INSURANCE COMPANY, as Assignee and Subrogee for George Lassanske,<br><br>    Plaintiff,<br><br>    v.<br><br>FLEETWOOD ENTERPRISES, INC., et al.,<br><br>    Defendants. | CASE NO. C04-1308-MAT<br><br>ORDER GRANTING IN PART AND STRIKING IN PART MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND GRANTING LIMITED JURISDICTIONAL DISCOVERY |

INTRODUCTION

Defendants Cummins Great Lakes, Inc. ("Great Lakes") and Cummins NPower, LLC ("NPower") (collectively "defendants") filed a motion to dismiss the third amended complaint of plaintiff Progressive Northern Insurance Company ("Progressive") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Dkts. 34 & 56.) Plaintiff opposes defendants' motion. (Dkt. 46.) Having considered pleadings filed in support of and in opposition to the motion, along with the remainder of the record, and, being fully advised, the Court finds and concludes as follows:

BACKGROUND

This matter concerns property damage sustained to a motor home owned by George and Arlene Lassanske and insured by Progressive. The motor home caught fire and sustained damage

ORDER
PAGE -1

while being driven in Washington State on May 30, 2002. (Dkt. 48.) Plaintiff's third amended complaint raises claims against a number of defendants, including, but not limited to, Great Lakes, NPower, and Cummins Engine Co., Inc. ("Cummins").

Cummins manufacturers engines and numerous other products. It is a licensed corporation in Washington, with distributors and service centers located throughout the state. Great Lakes was an Indiana Corporation with its principal place of business in DePere, Wisconsin. Great Lakes distributed Cummins' products in Wisconsin and Upper Michigan, and was in the business of selling and repairing engines, generators, and their respective parts. (Dkt. 47, Ex. B.) Great Lakes ceased doing business under that name on March 31, 2002. Defendants maintain that NPower purchased the assets of Great Lakes as of that date, while plaintiff asserts that NPower is the successor of Great Lakes following a merger of the two entities. NPower is a limited liability company organized under the laws of Delaware with its principal place of business in White Bear Lake, Minnesota. NPower is the exclusive distributor for Cummins' products in the upper mid-west region of the United States, including Minnesota, North Dakota, and Wisconsin, and parts of Michigan, Illinois, and Indiana. (*Id*., Ex. C.) As with Great Lakes, NPower sells and services engines, generators, and their respective parts. (*Id*.)

Cummins manufactured and warranted the engine installed in the Lassanske motor home. On May 19, 2001, Cummins sent Mr. Lassanske a recall letter urging him to contact his nearest "Cummins Distributor" to arrange for repairs relating to an air compressor defect in the motor home, and to reference a particular recall campaign number in so doing. (*Id*., Ex. D.) In response to that letter, Mr. Lassanske took his motor home to Great Lakes, in Wisconsin. Great Lakes performed the necessary repairs to the motor home pursuant to Mr. Lassanske's warranty on June 29, 2001. (Dkt. 35, Ex. A.) Additionally, NPower later performed engine work on the motor home in Wisconsin on May 10 and May 16, 2002. *Id*.

DISCUSSION

Plaintiff bears the burden of establishing personal jurisdiction over defendants. *Doe v.*

*Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Where, as here, the Court elects to resolve the motion on the parties' briefs, exhibits, and affidavits, rather than hold an evidentiary hearing, plaintiff need only "make a prima facie showing of jurisdictional facts in order to defeat [the] motion to dismiss." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). "'That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.'" *Doe*, 248 F.3d at 922 (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). The Court takes plaintiff's version of the facts as true for purposes of a Rule 12(b)(2) motion to dismiss, and resolves any conflicts in the evidence set forth in the affidavits in plaintiff's favor. *Id.*

The exercise of personal jurisdiction over a nonresident defendant requires both the satisfaction of the requirements of the forum state's long-arm statute, and the requirements of federal due process. *Chan v. Society Expeditions*, 39 F.3d 1398, 1404-05 (9th Cir. 1994). Washington's long-arm statute confers personal jurisdiction to the extent due process allows. *Id.* at 1405. "Where the forum's long-arm statute is coextensive with due process, as is Washington's, the focal inquiry becomes whether an exercise of jurisdiction comports with Constitutional due process." *IP Innovation, L.L.C. v. RealNetworks, Inc.*, 310 F. Supp. 2d 1209, 1212 (W.D. Wash. 2004) (citing, *inter alia*, *Chan*, 39 F.3d at 1405 and Wash. Rev. Code § 4.28.185).

Satisfaction of due process occurs when a nonresident defendant has "'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940))). As discussed below, jurisdiction may be either general or specific. Also, in addition to establishing the requisite contacts, the assertion of jurisdiction must be found reasonable. *Doe,* 248 F.3d at 925 (citing *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 (9th Cir. 1993)).

In this case, plaintiff maintains the existence of both general and specific personal

jurisdiction in this Court over Great Lakes and NPower. Defendants assert that plaintiff fails to carry its burden of making a prima facie showing of personal jurisdiction. For the reasons described below, the Court agrees with defendants on the subject of specific personal jurisdiction, but finds allowance for limited discovery on the issue of general personal jurisdiction appropriate.

A.   <u>General Jurisdiction</u>

General jurisdiction requires that the defendants' contacts with the forum be "continuous and systematic," and applies whether or not the cause of action arises from those contacts. *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414-16. Plaintiff asserts the existence of general jurisdiction based on an "alter ego" relationship between Cummins as a parent corporation and defendants as Cummins' subsidiaries. It appears undisputed that Cummins has continuous and systematic contacts within Washington and is, therefore, subject to general jurisdiction in this Court.

It is well established that the mere existence of a parent-subsidiary relationship is not sufficient to confer personal jurisdiction over the parent based on the subsidiary's forum contacts. *Doe,* 248 F.3d at 925. "[A] parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is 'consistent with the parent's investor status[.]'" *Id.* at 926 (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). "Appropriate parental involvement includes: 'monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures[.]'" *Id.* (quoting *Bestfoods*, 524 U.S. at 72).

However, the contacts of a subsidiary may be imputed to the parent under two exceptions – where the subsidiary is the parent's alter ego, or where the subsidiary acts as the parent's general agent. *Harris Rutsky & Co. Ins. Svcs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003). "An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations." *Doe*, 248 F.3d at 926.

In order to establish an alter ego relationship, "the plaintiff must make out a prima facie

ORDER
PAGE -4

case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Id.* (quoting *American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). The plaintiff must show that the parent controls the subsidiary "'to such a degree as to render the latter the mere instrumentality of the former.'" *Id.* (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).

Relying on factors identified as relevant to the alter ego analysis in a Pennsylvania district court decision, plaintiff asserts the existence of an alter ego relationship between Great Lakes, NPower, and Cummins. *See Simeone v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675-78 (E.D. Pa. 2005) (finding personal jurisdiction over subsidiary based on alter ego relationship with parent, which was undisputably subject to personal jurisdiction in the forum state). In particular, plaintiff points to their use of a "common marketing image," "common logo," and "integrated sales system"; the performance by Great Lakes and NPower of business functions Cummins would normally be expected to perform through its own departments – as the exclusive authorized agents to perform warranty repair work on engines manufactured by Cummins; and the fact that Great Lakes and NPower marketed Cummins' engines as Cummins' exclusive distributors in Wisconsin and Upper Michigan. *See id.* at 675.

Plaintiff also points to the recall letter as evidence of an alter ego relationship. As noted above, the recall letter instructed Mr. Lassanske to contact his "nearest Cummins distributor" in reference to a particular recall campaign number. (Dkt. 47, Ex. D.) Plaintiff asserts that Cummins made clear that only its authorized distributors were capable of performing the necessary repairs. It argues that, when interrelated businesses such as Cummins and Great Lakes/NPower collaborate on a recall campaign of this nature, they operate as a single entity such that an alter ego relationship is established.

Finally, plaintiff asserts that discovery could yield additional information further establishing the existence of an alter ego relationship between the entities. Plaintiff notes that

01  Great Lakes, NPower, and Cummins have yet to comply with the August 8, 2005 due date for
02  responses to outstanding discovery requests.
03       In response, defendants first argue that the alter ego exception is a "one-way street,"
04  applying only where a party seeks to impute the contacts of a subsidiary to a nonresident parent.
05  (*See* Dkt. 56 at 4.) However, the Ninth Circuit Court of Appeals has held that a parent
06  corporation's ties to a forum state do not, standing alone, establish personal jurisdiction over a
07  subsidiary. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301-02 (9th Cir. 1986)
08  (citing *Uston v. Hilton Casinos, Inc.*, 564 F.2d 1218, 1218 (9th Cir. 1977)). Courts in the Ninth
09  Circuit have further stated that "[t]he activities of the parent corporation are irrelevant absent
10  some indication that 'the formal separation between parent and subsidiary is not scrupulously
11  maintained.'" *Newman v. Comprehensive Care Corp.*, 794 F. Supp. 1513, 1519 (D. Or. 1992)
12  (quoting *Uston v. Grand Resorts, Inc.*, 564 F.2d 1217, 1218 (9th Cir.1977)). These cases,
13  therefore, appear to refute defendants' contention as to the limited application of the alter ego
14  exception.
15       Defendants next argue that NPower is not a Cummins subsidiary, but, rather, a separate
16  and independently incorporated entity. However, at least with respect to the agency exception,
17  it is irrelevant whether an entity is a subsidiary or independently owned. *Wells Fargo & Co. v.
18  Wells Fargo Express Co.*, 556 F.2d 406, 423 (9th Cir. 1977). The Court will assume for the
19  purposes of this order that the status of defendants as either a subsidiary or an independently
20  owned entity is likewise irrelevant to the alter ego exception. The Court will also utilize the term
21  subsidiary for the purposes of this order.
22       Defendants' final argument asserts plaintiff's failure to make out the required prima facie
23  case for the establishment of an alter ego relationship. Defendants rely on Ninth Circuit precedent
24  in arguing this point, dismissing the relevance of the decision from the Third Circuit relied on by
25  plaintiff. This final argument guides the remainder of the Court's alter ego analysis.
26       In *Doe,* the Ninth Circuit explored scenarios supporting application of the alter ego

ORDER
PAGE -6

exception:

> For example, where a parent corporation uses its subsidiary "as a marketing conduit" and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied. That test is also satisfied where the record indicates that the parent dictates "every facet [of the subsidiary's] business – from broad policy decisions to routine matters of day-to-day operation."

248 F.3d at 926 (internal cited and quoted sources omitted). The Court noted that, in that case, plaintiff presented no evidence of the parent's day-to-day involvement in the business of the subsidiaries. *Id*. at 927. The Court further found that neither direct involvement in financing and macro-management, the giving of interest-bearing loans, nor references in an annual report to subsidiaries as "divisions" of the parent established the existence of an alter ego relationship. *Id*. at 927-28. The Court concluded that the evidence established only "an active parent corporation involved directly in decision-making about its subsidiaries' holdings[,]" and that, because the parent and subsidiaries "observe all of the corporate formalities necessary to maintain corporate separateness," plaintiffs failed to establish that there was such unity of interest and ownership that the separate corporate personalities no longer existed. *Id*. at 928. *See also Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d at 1135 (while neither one hundred percent control through stock ownership, shared senior officers, directors, offices, and staff, nor a single instance reflecting activity inconsistent with a parent's investor status, and more like day-to-day involvement, sufficed to render a subsidiary an alter ego of the parent, the Court found the record insufficiently developed and remanded the matter to allow for jurisdictional discovery); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (finding no alter ego relationship where parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several directors on the board of the subsidiary, and was closely involved in the subsidiary's pricing decisions).

In this case, plaintiff does not proffer any evidence indicating the involvement of Cummins in the day-to-day activities of Great Lakes or NPower. Moreover, while pointing to their use of

a "common marketing image" and the fact that Great Lakes and NPower marketed Cummins' engines as their exclusive distributors (*see* Dkt 47, Exs. B & C), plaintiff fails to show Cummins used these entities as marketing conduits to shield itself from liability. In fact, given that Cummins is itself subject to the general jurisdiction of this Court, its relationship with Great Lakes and NPower cannot be said to shield it from liability. Plaintiff also fails to put forth evidence supporting the conclusion that the entities in any respect failed to observe corporate formalities necessary to maintain corporate separateness.

However, as noted above, plaintiff asserts that discovery could yield additional information further establishing the existence of an alter ego relationship between the entities. "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1997) and *Wells Fargo & Co.*, 556 F.2d at 430 n.24). In this case, the Court finds a more satisfactory showing of the facts necessary to determine whether or not an alter ego relationship exists between Cummins and Great Lakes/NPower.

Because the Court concludes that additional information would be helpful in resolving this issue, it declines to rule on defendants' motion as it pertains to the issue of general jurisdiction. The Court, therefore, in part strikes defendants' motion to dismiss pending the conclusion of jurisdictional discovery. Jurisdictional discovery is limited to the issue of general jurisdiction based on an alter ego relationship. *See generally Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987) (affirming decision to stay discovery "not required to address the issues raised by defendants' motions to dismiss"); *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 675 (S.D. Cal. 2001) ("When a defendant raises jurisdictional objections, the court may stay discovery proceedings generally and limit discovery to matters relevant to the court's jurisdiction. . . . Courts in other circuits have routinely stayed discovery on the merits altogether while challenges to

jurisdiction are pending.") (citations omitted). Defendants may re-note their motion to dismiss based on general jurisdiction, and the parties may file supplemental briefs, following the conclusion of that discovery.[1]

B. <u>Specific Jurisdiction</u>

Specific jurisdiction requires a showing that the nonresident defendant purposely established significant contacts with the forum state, and that the cause of action arises out of or is related to the defendant's forum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-73 (1985). In the Ninth Circuit, courts apply a three-part test to evaluate the nature and quality of a defendant's contacts with the forum state:

> (1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
>
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
>
> (3) Exercise of jurisdiction must be reasonable.

*Doe*, 248 F.3d at 923 (quoting *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831-32 (9th Cir. 1996)).

The "purposeful availment" requirement looks to whether a defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *See Harris Rutsky & Co. Ins. Servs.*, 328 F.3d at 1130 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This requirement "ensures that a nonresident defendant will not be haled into court based upon random, fortuitous, or attenuated contacts with the forum state." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citing *Burger King Corp.*, 471 U.S. at 475).

Relying on Washington's long-arm statute and a Washington Court of Appeals case, plaintiff first argues that, because specific personal jurisdiction against defendants is based on their

---

[1] Jurisdictional discovery must be completed by the amended discovery deadline in this case – January 30, 2006. (*See* Dkt. 45.)

ORDER
PAGE -9

commission of a tortious act, the first two factors of the above test are satisfied by a showing that the injury at issue occurred in this state and was caused by an act of the nonresident defendants outside of this state. *See* Wash. Rev. Code § 4.28.185(1)(b) and *Puget Sound Bulb Exch. v. Metal Bldgs. Insulation, Inc.*, 9 Wn. App. 284, 291, 513 P.2d 102 (1973). However, more recent state court precedent refutes this contention. *See Grange Ins. Assocs. v. State*, 110 Wn.2d 752, 759-60, 757 P.2d 933 (1988) (cases such as that relied upon by plaintiff were decided prior to United States Supreme Court decisions clarifying that the purposeful nature of minimum contacts is a separate element from the reasonableness balancing test).

Plaintiff alternatively asserts the satisfaction of the purposeful availment requirement through a "stream of commerce" argument. It asserts that Cummins, by manufacturing products designed to be used in interstate travel and in placing those products into the stream of interstate commerce, should anticipate being haled into court in any forum in this country. Plaintiff distinguishes other forms of vehicular transport, such as automobiles – which may never engage in interstate travel, from motor homes – which are by their very nature designed for such use. Plaintiff argues that, by acting as agents for Cummins in performing warranty work on those same products, Great Lakes and NPower should be similarly charged with knowledge that their warranty repairs will, in all probability, subject them to the jurisdiction of other states' courts. Plaintiff adds that, because the warranty work could be as significant as replacing or rebuilding an entire engine, and it is undisputed that the manufacturer of the engine is subject to jurisdiction around the country for injuries occurring during the warranty period, the service centers performing such warranty repairs should be subject to the same jurisdiction.

In response, defendants proffer the "effects test" as requiring plaintiff to show that their contacts with the forum are attributable to: (1) intentional acts; (2) aimed expressly at the forum; (3) causing harm the defendants know will be suffered in the forum. *Rio Props., Inc.*, 284 F.3d at 1019. However, plaintiff here alleges defendants' negligent conduct, as opposed to intentional acts, exposes it to specific jurisdiction. *See*, *e.g.*, *Calder v. Jones*, 465 U.S. 783, 789 (1984) (in

applying effects test, distinguishing "mere untargeted negligence" with "intentional, and allegedly tortious, actions . . . expressly aimed at" the forum state); *Rosenberg v. Seattle Art Museum*, 42 F. Supp. 2d 1029, 1037 n.8 (W.D. Wash. 1999) ("Although SAM states that both its fraud and negligent misrepresentation claims support a finding of jurisdiction, it appears that only an intentional, not a negligent, tort can satisfy the Ninth Circuit's effects test.") Defendants also generally reject plaintiff's attempt to make out a prima facie case of specific personal jurisdiction based on the assertion that the motor homes on which defendants perform work are designed for interstate travel. As discussed below, this latter argument withstands scrutiny.

In *World-Wide Volkswagen Corp.*, the United States Supreme Court declined to find personal jurisdiction over a nonresident automobile dealer based solely on the fact that the dealer sold a car which later became involved in an accident in another state:

> Petitioners carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law. They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, respondents seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.

444 U.S. at 295. The Court rejected the assertion of personal jurisdiction based on the mere foreseeability that, because they are mobile by design, automobiles sold by the dealer would make their way into the forum state. *Id*. at 295-96. "Rather, it is that defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id*. at 297. *See also Karsten Mfg. Corp. v. United States Golf Ass'n*, 728 F. Supp. 1429, 1433-34 (D. Ariz. 1990) ("[F]oreseeability of injury alone is not sufficient to obtain personal jurisdiction over a defendant who did not purposefully direct its activities at the forum state.") (citing *Burger King Corp.*, 471 U.S. at 474).

The Supreme Court distinguished the circumstance wherein the sale of a product was "not

ORDER
PAGE -11

simply an isolated occurrence," and arose from efforts "to serve, directly or indirectly, the market for its product in other States," noting: "The forum State does not exceed its powers under the Due Process Clause if it asserts jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp.*, 444 U.S. at 297-98. In contrast, a consumer's unilateral act of bringing a nonresident defendant's product into the forum state does not suffice to establish personal jurisdiction over that defendant. *Id.* at 298 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In this case, as in *World-Wide Volkswagen Corp.*, plaintiff offers in support of specific personal jurisdiction little more than the mere assertion that defendants could foresee that a motor home on which they performed work could make its way to Washington State. It provides no case law in support of the contention, and otherwise fails to demonstrate, that the fact that defendants performed such work on a motor home, as opposed to an automobile, and that they performed that work as a part of a warranty somehow transforms their behavior into that which they should reasonably anticipate resulting in their being haled into court in this state. *Cf.*, *e.g.*, *Farmers Ins. Exch.*, 907 F.2d at 913-14 (distinguishing the automobile dealers in *World-Wide Volkswagen Corp.* from automobile liability insurers contracting to indemnify and defend for claims that will foreseeably result in litigation in other states; that is, where litigation requiring the presence of the insurer was not only foreseeable, but purposely contracted for by the insurer); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1074-75 (9th Cir. 1986) (finding personal jurisdiction reasonable based on a lesser showing of minimum contacts where automobile dealer sold a car it knew would be resold in the forum state). Moreover, while a motor home, in comparison to an automobile, may be more typically utilized for interstate travel, it need not necessarily be used for such a purpose.

Given the above, the Court finds that plaintiff fails to make out a prima facie case satisfying the purposeful availment requirement. Because the three-part test for establishing specific

personal jurisdiction over nonresident defendants is conjunctive, and plaintiff fails to establish the first part of that test, the Court need not address the remaining factors.

### CONCLUSION

The Court concludes that plaintiff fails to make a prima facie showing of specific jurisdiction over Great Lakes and NPower, but finds appropriate jurisdictional discovery on the issue of general jurisdiction based on the existence of an alter ego relationship between Cummins and Great Lakes/NPower. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED in part and STRUCK in part pending the conclusion of jurisdictional discovery.

DATED this 18th day of October, 2005.

Mary Alice Theiler
United States Magistrate Judge